May it please the Court. My name is Donna Polinska. I was appointed to represent Mr. Lopes in this proceeding. By way of background, Mr. Lopes was charged in Madison County, Illinois with three counts of grooming and disorderly conduct. While in jail and those charges pending, an evaluation was done by Dr. Daniel Cuneo to determine whether or not he was fit to stand trial on those criminal charges. After Dr. Cuneo entered his report into the court system, he indicated that Mr. Lopes was unfit to stand trial. At that point, the state's attorney's office then determined to proceed on this matter as a sexually dangerous person act filing. They then dismissed the previous charges and filed this attempting to deem Mr. Lopes as a sexually dangerous person. Prior to being appointed to represent Mr. Lopes on this, I did not know what the SDP Act was. The SDP Act is basically a hybrid. It's civil in nature. However, the rules of criminal procedure guide the proceedings. At the point that this was transferred to a filing under the SDP Act, Judge Schrader was appointed as the judge and the case then proceeded pursuant to the Act. Under the SDP Act, in order for the state to prevail, they have to one, the existence of a mental disorder for more than one year. That mental disorder also has to be associated with the propensity to commit a sexual offense. Number three, the existence of that, he has to have the existence of demonstrated propensities towards acts of sexual assault or acts of sexual molestation of children. I'm sorry, that's the fourth prong. In People v. Allen, the Supreme Court basically indicated that the state must prove at least one act of or attempt at a sexual assault or sexual molestation. Now, that prong is important for the second argument of plain error in my brief. The first argument is that the court should not have allowed Mr. Lopes to represent himself. By very nature of the SDP Act, the person has to have a mental defect or disorder for at least one year prior to the filing of the SDP case. In a criminal case, if a person is unfit to stand trial, he's then committed until he is fit to stand trial. In a criminal case, the person is also deemed, if they are competent to stand trial, that they are fit to represent themselves unless the court deems that they are not able to adequately represent themselves. This issue was argued in several cases. Indiana v. Edwards is cited in my brief. There, the court, that dealt with a defendant who was found mentally competent to stand trial if he was represented by counsel. The question was whether he would not be mentally competent to represent himself during trial. The court indicated that a defendant may well be able to satisfy the mental competence standard to stand trial when represented, but not able to represent himself alone during trial. In the present case, although it's civil in nature, yes, a person can be tried in a civil case under the SDP Act, even if he is mentally unfit. However, I don't think we can make the stretch that, as you can in a criminal case, that he might be able to represent himself because he is able to establish a colloquially with the judge or talk to the judge and answer questions adequately about who he is, what the proceedings entail. If you read Dr. Cuneo's report, when he determined that the defendant was unfit to stand trial, he indicated that defendant's mental illness, and again, he was a defendant at this point. During the SDP proceedings, he's a respondent because it's not criminal in nature. He stated, defendant's mental illness substantially impairs his ability to understand the nature and purpose of the proceedings against him and his ability to assist in his own defense. He then opined that defendant was unfit to stand trial in a criminal case. Given this report, if an individual is unable to assist in his own defense with counsel, how is he able to conduct his own defense? And that's the real question here. He can be tried, even if he is unfit to stand trial in a criminal case, in an SDP case. However, I don't think we can make the stretch that, as you can in a criminal case, that he might be able to represent himself. I don't think we can make the stretch that, because he was able to discuss things with the judge, that he could basically represent himself and understand all of the proceedings. Dr. Cuneo indicated in his report that defendant's ramblings, unclear thoughts, and demeanor were all over the place. He had scattered thoughts. He had delusional material in his thinking, and his delusions were religious, sexual, grandiose, and he kept repeatedly explaining that he was a defendant. He kept repeatedly explaining that his church, he called it Ristar, is about someone coming into their sexuality. He repeated things that Dr. Cuneo indicated that he did not think he could stay on task. He might understand the different court personnel he was deemed to quickly contaminate his statements. Therefore, I can't, I don't understand in this particular instance where the court can find, after reading Dr. Cuneo's report, that he could adequately represent himself. Dr. Cuneo's report is not a finding of the court. No, it is not a finding of the court. You're correct. It is, though, the basis that the court, the state's attorney's office used to proceed under this sexually dangerous person. And the issue of whether a person has waived the right to counsel is a determination made by the trial court, and we review that determination on the use of discretion standard. Is that right? That's correct, Your Honor. So what we're here to do today is to decide whether or not the trial court used its discretion in that finding. Yes, Your Honor. And I would argue the court did abuse its discretion based on all of the information that the trial court had at that time. He not only had Dr. Cuneo's report, which I believe is the most telling since Dr. Cuneo, and I hate to keep repeating myself, but he stated his mental illness substantially impairs his ability to assist in his own defense. I can't imagine what he would have indicated if he thought that Mr. Lopes was going to be representing himself, not just assisting his counsel in his defense. But Dr. Karich, Dr. Mark Karich, also evaluated the respondent. In a sexually dangerous person case, the individual has to be evaluated by two separate evaluators to determine whether or not they are in fact sexually dangerous. Dr. Karich also agreed with Dr. Cuneo's statements about him being all over the place in his statements that he was delusional, delusional material, and I'm sorry, I lost my train of thought there. But he basically agreed with Dr. Cuneo's analysis of his ability to stand trial. He did not indicate that he was unfit to stand trial, but that he had delusional thoughts and scattered all over the place. The state argues that if this were the case, if I'm right here, then all individuals tried under the SDP Act would have to have attorneys because by nature of the first element that they had a mental disease or disorder. I'm not going to go that far and say that. An individual could have a pedophilia disorder and nothing else. That could make them a sexually dangerous person. But in this particular case, all three doctors that evaluated him diagnosed him with schizophrenia, either alcohol disorder, cannabis use disorder, other specified personality disorders, and the pedophilia disorder. He had a lot more going on there than possibly someone who might have a pedophilia disorder that is mentally capable of representing themselves. As I stand here today, because the first element of this issue is that a person has to have a mental disorder, I would say for the integrity of the judicial system, yes, every individual should have counsel. But I think that would be a case-by-case basis. I think that the trial court abused his discretion by failing to look at the reports that indicated that he was unable to assist in his own defense. That in and of itself should have been a red flag, that he may not be competent to conduct his own defense. Now, with respect to the second argument, Supreme Court Rule 615A provides that plain errors or defects affecting substantial rights may be brought to the attention of the reviewing court. The error has to be evidence in a criminal case closely balanced, and that error alone threatened to tip the scales against the defendant or that error alone threatened to lead to a conviction. And that error is so fundamental and of such magnitude that the defendant is denied the right to a fair trial. In this particular case, the State had the evaluations from the doctors that stated he had the mental disorder. He had the pedophilia disorder, which provided the second and third element of the SDP Act. The last element is the at least one act of or attempt at a sexual assault. The only testimony provided in the trial court to this was by a YMCA daycare worker who had the children at a playground. According to her testimony, she basically testified as to what the child said that ran over to her after having a conversation with Mr. Lopes. She did not hear the conversation with Mr. Lopes. In this particular case, the State had the evaluations from the doctors that stated he had the mental disorder.  The only testimony provided in the trial court to this was by a YMCA daycare worker who had the children at a playground. In this particular case, the State had the evaluations from the doctors that stated he had the mental disorder. According to her testimony, she basically testified as to what the child said that ran over to her after having a conversation with Mr. Lopes.  It's pretty clear from the record the court engaged in numerous discussions with this respondent in order to determine his capacity to waive counsel. As a result of these discussions, what the court found was the respondent, including the court, he wanted to proceed pro se. He did not want an attorney. The respondent was 40 years old. He was a high school graduate. He indicated he had spent 2,000 hours studying law and that he had previously represented himself to verdict two or three times. The court warned the respondent that he would be held to the same standards as an attorney, but the respondent indicated he still wished to proceed pro se. What were the verdicts? I never concluded from the record exactly what those verdicts were. He did indicate there were misdemeanor cases, but it sounds like this guy has been throughout the United States and is a little bit more familiar with some of the ins and outs of the legal system than maybe some attorneys are. But I'm not certain what those were. Does his name pronounce Lopes or Lopez? That is a very good question. I was assuming it was Lopez, but when I spoke to his lawyer, she indicated she thought it was pronounced Lopes. I think she probably has a little more familiarity with the case than I do. We'll go with Lopes. What's very clear from the record is the court took great care to warn this respondent that he needed an attorney, that he was in over his head, that the state would probably have an advantage because they were trained attorneys. And the court many times tried to persuade the respondent to take an attorney, and each time he said no. He even asked for standby counsel, and the court said, I'll either give you an attorney or you can represent yourself. I don't do the hybrid stuff. I can totally understand that. And so the respondent said no, even without standby counsel, I still want to go forward by myself. The court, even in looking at Rule 401A, although the court was not required to follow Rule 401A, it's pretty clear in this case that that's what the judge did. Followed the outlines and guidelines of Rule 401A. The court then applied them to this case, let the respondent know, look, if these two evaluators think that you meet this and the state is able to prove its case, you may be held for a week or you may be held for the rest of your life. That sounds to me like the minimum and maximum that you might be able to be held on a criminal case under 401A. So it looks to me like all of the cautions the court could have made and given this respondent, the court did do that. The respondent was not willing to let someone else represent him. And with the court's permission, I would like to read just a short excerpt from a part of the proceedings. This is a motion hearing on November 30, 2016. And this is the court addressing Mr. Lopez, the respondent. The court says, we've gone through in detail about you representing yourself. You're not a lawyer. You may think you know a lot. But there's a lot a lawyer would know that you don't know, and I think you recognize that. I don't understand why you would want to continue to represent yourself when I would gladly appoint you a competent attorney to assist you. But that's your choice, Mr. Lopez, Mr. Lopes. Everything I've seen from your conduct in court, your demeanor, your interactions with me, all still lead me to believe that you are of a mind to be able to do this. I'm not going to say that you are incompetent. I don't see anything to indicate that you are actively suffering from schizophrenia. I don't think you hear voices. You've demonstrated that. I don't think you see things that aren't there. You've always acted appropriately. You seem to be an intelligent gentleman. Is it really the case that a person who might have been found incompetent in a criminal case, when the state then elects to proceed into the sexually dangerous person's case, is that incompetence, does that mean that person can never represent himself? Well, we accept jury waivers in these cases all the time. Exactly what can a respondent waive? Should they not be allowed to waive a jury trial either? Should these have to go to a verdict on a jury trial? The answer is no, they shouldn't. I believe that we have these rules set up and that it is up to the trial court to ensure that the court is convinced the person has the representability to represent themselves in this kind of a proceeding. I think Judge Schroeder went above and beyond. He did everything to get this guy to try to take an attorney. Predictable results. He didn't know what he was doing. I'm not saying that he did a bad job representing himself, but I do not believe the trial court could have done more. And on this record, because the trial court exceeded what any requirements would be under Rule 401A under a criminal context, and also because under the context of involuntary commitment cases, respondents there are also allowed to waive counsel and represent themselves. We would respectfully ask you to affirm and would entertain any questions. Absent that, the State respectfully asks you to affirm. Thank you, Your Honor. Thank you. Court battle. Thank you. With respect to the judge engaging with Mr. Lopes regarding his ability to represent himself, Judge Schroeder did ask him all of those questions. Those questions were not difficult questions, his name, his age, how far he had gone in school. To me, 2,000 hours studying law is a little bit telling as to maybe his actual abilities. The judge asked him where he got that. He said mainly in jail is where he had his 2,000 hours of studying law. Dr. Cuneo's report also indicates that he was in a mental facility in Oregon. One of the cases that he had misdemeanors that he represented himself on, I believe, he was committed to a mental institution in Oregon. Although someone can want to proceed pro se and be insistent upon him being able to proceed pro se, it's the court's job to make sure, with all of the given information, that that mistake is not made if he should not be able to or not represent himself. In this case, he had two doctors, two experts that indicated that this individual could not focus, could not, Dr. Cuneo was the only one that came right out and said he could not even assist in his own defense. I keep beating that horse dead, but if you can't assist in your defense, how can you represent yourself without the help of a counsel? And for those reasons, Your Honor, I would request that you reverse the case and remand it back to Madison County. Thank you. Counsel, thank you for your arguments. The court will take this matter under advisement and render a decision in due course.